ALEX McCUTCHIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALMA McCUTCHIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1497, 1498. Promulgated April 30, 1945.

*R. B. Cannon, Esq.*, for the petitioners.
*William G. Ruymann, Esq.*, for the respondent.

1246

OPINION.

ARUNDELL, *Judge*: The first issue deals with the taxability of petitioners on the income of the four trusts here involved under section 22 (a) of the Internal Revenue Code and under the principle of *Helvering* v. *Clifford*, 309 U. S. 331. The respondent contends that the McCutchin Investment Co. is but an *alter ego* of petitioner Alex McCutchin; that he must be regarded as the real trustee; and that as

such he has retained controls over the several trusts sufficient to leave him in substance the owner of the properties.

It is apparent, we think, that the McCutchin Investment Co. is not an independent entity insulating the grantors against taxability, if otherwise the various trusts should fall within the rule of the *Clifford* case. Petitioner Alex McCutchin owned all the shares of the corporation except qualifying shares and directly managed the corporation as its president. He further reserved the right to change the trustee and substitute himself. Under these circumstances he must be treated as the actual trustee for present purposes. *Phipps* v. *Commissioner*, 137 Fed. (2d) 141.

The respondent's contention that petitioner Alex McCutchin retained such control over the properties of the trusts as to remain in substance the owner thereof is based upon the following alleged factors: (1) The intimate family relationship of the parties; (2) the broad powers vested in the trustee-settlor in connection with the management and control of the trusts; (3) the broad powers vested in the trustee-settlor in connection with the distribution of the income of the trust property; (4) the ability of the trustee-settlor to shift the beneficial interest; and (5) the ability of the settlor to gain through his dealings with the trusts. Initially, it must be observed that the four trusts are expressly irrevocable and are not subject to alteration or amendment By the terms of the instrument the grantors divested themselves of all interests in the trusts and only upon the remote contingency that they survive their children, who were minors at the time of the creation of the trusts, and the issue of such children, have they any reversionary interest. The short term factor of the *Clifford* case is thus not present in this case. See *Lura H. Morgan*, 2 T. C. 510.

That the trusts were established for the benefits of the children and the parents of the grantors can not of itself direct the conclusion. *Lura Morgan, supra.* The powers of management and control over the trusts were vested in petitioner Alex McCutchin (ignoring the investment company) as the trustee and the exercise of such powers for his own advantage as distinguished from that of the trusts would have been subject to strict judicial control. *Slay* v. *Mary Couts Burnett Trust*, 180 S. W. (2d) 480; *MacDonald* v. *Follett*, 180 S. W. (2d) 334. It is now clear that the possession of such fiduciary powers as here vested in the trustee does not in and of itself serve to subject the grantor to a tax on the income of the trusts. *Armstrong* v. *Commissioner*, 143 Fed. (2d) 700; *Estate of Benjamin Lowenstein*, 3 T. C. 1133; *David Small*, 3 T. C. 1142. There must be an economic gain or profit realized or realizable by the grantor before he may be taxed. *Helvering* v. *Stuart*, 317 U. S. 154. But, the respondent argues that petitioner Alex McCutchin may derive and, in fact, has derived economic gains from his dealings with the trust *res*. The evidence

shows that he purchased four oil properties during the taxable year, part of the consideration being furnished by him and part by the trusts. In return for their contribution the trusts received oil payments in each and in every instance. It was stipulated that in two instances the petitioner received more proportionately for his contribution than did the trusts and that in the remaining two the trusts received more proportionately for their contribution than did the petitioner. These circumstances satisfy us that the petitioner has not dealt unfairly with the trusts in his capacity and has not utilized the trust properties to his own advantage.

The crux of respondent's argument seems to rest in the contention that the petitioner retained the right to make or withhold distributions at will and that this "is equal to the reserved power of the taxpayer settlor to shift the beneficial interest. *Commissioner* v. *Buck,* 120 Fed. (2d) 775." It is argued that in all four trusts petitioner could increase the estate of the secondary beneficiaries by withholding distributions of income and corpus during the lifetimes of the primary beneficiaries and that he could in the case of Carrie and J. A. McCutchin trusts eliminate the secondary beneficiaries entirely by distributing the whole corpus to the primary beneficiaries at any given time.

We think this argument has no application whatsoever to the Jerry and Gene McCutchin trusts. The indentures establishing those trusts provide that the income is to be accumulated and reinvested until the beneficiary reaches the age of 21. Thereafter, and until the beneficiary reaches the age of 25, the trustee is to pay monthly to the beneficiary such proportion of the income as the trustee deems advisable, the balance to be accumulated and reinvested. After that time the entire net income of the trust is to be distributed to the beneficiary as long as the trust continues. The only variation from the above provision is authorized only in the event those legally bound to support, educate, and maintain the beneficiary prior to his twenty-first birthday are unable to do so. That problem will be discussed hereinafter more fully. The devolution of the corpora of the trusts is fixed by the terms of the trust instruments, which permit of no variation.

The instant case is different from *Louis Stockstrom,* 3 T. C. 255; affd., 148 Fed. (2d) 491. In that case the court pointed out that the trustee-settlor "was not required to distribute any part of the income to any of the beneficiaries during his lifetime." Nor do we think it is comparable to *Commissioner* v. *Buck, supra,* where the grantor had reserved for his life, the power, at any time, and from time to time, to "alter or amend in any respect whatsoever" the provisions relating to the distribution of the income and the principal of the trust estate. The facts and circumstances here are more like those in *David Small,*

*supra*, and *Frederick Ayer*, 45 B. T. A. 146. In the *Small* case the powers of management lodged in the trustee-settlor appear to be as broad and comprehensive as those here present and in that case, in addition to his discretionary power over the distribution of the income to the minor children, the trust instrument also provided that in the event the income from the trust, at any time while the petitioner or his wife was trustee, should in his or her sole discretion be deemed insufficient for the comfort, care, maintenance, and/or support of the children or issue of deceased children, the trustee might in his or her sole discretion pay to such children or issue of such children, out of principal, such additional amount as he deemed necessary or advisable. It was further provided that the trustee in making such payments to one child or to the issue of one child to the exclusion of others, should charge the entire trust estate and not the ultimate share set apart for the child for whose benefit the payment was made. It is apparent that the control of the trustee over the distribution of the trust property in the instant case is less comprehensive than in the *Small* case, *supra*. In the circumstances, we conclude that the trusts for the benefit of the children should be given treatment similar to that which we accorded in the cases just mentioned.

The two trusts for the benefit of the parents are different from those for the children. There the trustee was to pay to the beneficiary so much of the income or corpora as in his discretion was appropriate for the needs and welfare of the beneficiary. Any undistributed income was to be accumulated and the whole was to vest in equal shares in the two sons of the petitioner upon the death of the primary beneficiary. It is to be noted that the sweeping rights of alteration or amendment reserved to the settlor in his individual capacity in *Commissioner* v. *Buck*, *supra*, are not here present and in the circumstances, it would appear that the broad powers over the income and principal there reserved would have little, if anything, in common with the limited discretion here provided for. See *Phipps* v. *Commissioner*, *supra*. However, the facts here blend rather closely with those in *Louis Stockstrom*, where it was held that the broad management powers on the part of the settlor-trustee, coupled with the discretion in the distribution or accumulation of the income, were sufficient to render the settlor-trustee taxable as the "owner" of the trust property.

Accordingly, we conclude that the petitioner here is likewise liable to tax within the meaning of section 22 (a) of the Internal Revenue Code on the income of the trust established by him for the benefit of his parents.

The trusts for the benefit of Jerry and Gene McCutchin provide that the income thereof may be used for the support, education, and maintenance of the minor beneficiary if prior to the time he becomes of age

those legally bound to support, educate, and maintain him are unable to do so.. At all times pertinent petitioners were well able to provide for their children and none of the income of the trusts was used to that end. *Helvering,* v. *Stuart, supra,* therefore, is not applicable. *Robert P. Scherer,* 3 T. C. 776. Moreover, it may not be amiss to point out that even were the rule of the *Stuart* case applicable in the instant case, petitioner would be entitled to the benefits of section 134 of the Revenue Act of 1943, adding section 167 (c) of the Internal Revenue Code, upon compliance with the conditions therein set forth.

The remaining issue concerns the deductibility of the amount of $27,970.42 as intangible drilling and development costs incurred in the drilling of three oil wells on the Reagan leasehold. Under the provisions of Regulations 103, section 19.23 (m)–16,[1] the taxpayer is accorded an option to charge to expense or to capitalize certain expenditures in connection with the drilling and development of oil wells. It is now settled that the option does not extend to costs incurred in the drilling of wells where such drilling is required as part of the consideration for the acquisition of the lease. *F. F. Hardesty,* 43 B. T. A. 245; affd., 127 Fed. (2d) 843; *Hunt* v. *Commissioner,* 135 Fed. (2d) 697; *F. H. E. Oil Co.,* 3 T. C. 13. Indeed, the opinion of the Circuit Court of Appeals for the Fifth Circuit, rendered March 6, 1945, affirming the *F. H. E. Oil Co.* case, holds that the cost of drilling oil wells is a capital investment in every instance, recoverable only by depletion, and that the provisions of section 23 (m)–16 of Regulations 101 and 103, in so far as the granting of the option is concerned, are inconsistent with the statute. Aside from the broad impact of that decision, under the terms of the instant lease petitioner was obligated to drill in order to avoid termination of the lease in whole or in part. Such a condition falls within the rationale of all the above cited cases and on their authority we hold that the deduction of the drilling costs should properly be disallowed.

It is conceded by the Commissioner that the disallowance of this item necessitates the allowance of additional depletion in the amount of $1,395.63 by reason of the capitalization of the intangible drilling and development costs. This concession will be given effect in the recomputation under Rule 50.

*Decisions will be entered under Rule 50.*

---

[1] Sec. 19.23 (m) 16. *Charges to capital and to expense in the case of oil and gas wells.—* (*a*) Items chargeable to capital or to expense at taxpayer's option :

(1) Option with respect to intangible drilling and development costs in general : All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * *