*Decision will be entered under Rule 50.*

ESTATE OF STANDISH BACKUS, DECEASED, LOTTA B. BACKUS AND DETROIT TRUST COMPANY, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOTTA B. BACKUS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5280, 5281.   Promulgated May 9, 1946.

*Thomas G. Long, Esq.,* for the petitioner.
*Philip M. Clark, Esq.,* for the respondent.

HARRON, *Judge*: Respondent determined deficiencies in the income tax liability of Standish Backus, deceased, Docket No. 5280, for the years 1939, 1940, and 1941 in the respective amounts of $5,337.75, $5,336.29, and $5,466.48. The executors of the estate of Standish Backus contest the determination made by the respondent in each taxable year excepting the disallowance of a deduction in 1940 which was claimed as a contribution. Petitioners concede the disallowance of that deduction.

Respondent determined deficiencies in the income tax liability of Lotta B. Backus, Docket No. 5281, for the years 1939, 1940, and 1941 in the respective amounts of $32,274.76, $45,530.94, and $61,022.39. The deficiencies are contested in their entirety.

In both petitions one issue relates to trusts which were created in 1924 by both Standish and Lotta Backus, as the grantors. In Docket No. 5281 there is a second issue, which relates to trusts created in 1932 by Lotta Backus. The question is whether the income from all of the trusts is taxable to the grantors under sections 22 (a), 166, or 167 of the Internal Revenue Code.

Petitioners filed their respective returns with the collector for the district of Michigan at Detroit. The record consists of stipulations of facts and exhibits.

## The 1924 Trusts.

FINDINGS OF FACT:

The facts which have been stipulated are adopted as part of the findings of fact and are incorporated herein by reference.

Standish Backus, who died on July 13, 1943, and Lotta B. Backus were, at all times material herein, husband and wife. They resided in Detroit, Michigan. They have five children, as follows: Standish, Jr., born April 5, 1910; Barbara, born May 17, 1912; Charles II, born March 29, 1917; Dorothy, born May 21, 1920, and Virginia, born January 11, 1922.

On December 11, 1924, Standish and Lotta, acting as donors, executed a trust indenture for the benefit of their five children. The Security Trust Co. was named trustee. Later, it became the Detroit Trust Co., which has continuously served as trustee.

Under the terms of the indenture the grantors created five separate and distinct trusts for their children, with the intention, however, that the several trusts should be considered and treated as a single combined trust until the oldest living beneficiary arrived at the age of 30 years. Thereupon the principal and all undistributed income was to be divided by the trustee into equal portions. An equal portion was to be set aside for each named beneficiary then living and for the surviving family, consisting of a spouse and children of each deceased beneficiary. Portions set aside for the chil-

dren of the grantors were to be held in trust. A portion set aside for the issue and surviving spouse of a deceased beneficiary was to be paid over to such person or persons as such deceased beneficiary might have directed in writing.

Each separate trust for a child of the grantors was to continue during the lifetime of the child for whose benefit the trust was created, and it would terminate upon his or her decease. However, the combined trust or any or all of the separate trusts might be terminated at any time by the joint consent of the beneficiary or of the beneficiaries affected and both donors, if living, or of a surviving donor, such joint agreement to be evidenced in writing.

If a trust should be terminated during the lifetime of a beneficiary by the joint consent of the beneficiary and the donors of the trust, the entire trust estate, including principal and undistributed income, was to vest in and be distributed to the beneficiary for whose benefit the trust was created.

If a trust continued throughout the lifetime of the beneficiary for whose benefit the trust was created, then upon the death of the life beneficiary the entire trust estate, including principal and undistributed income, was to be distributed to the persons appointed by the life beneficiary under a written instrument; or, in the event of the failure of the beneficiary to make such appointment, then the trust estate was to pass to those entitled to succeed to the estate of the deceased life beneficiary under the laws of the State of Michigan providing for the descent of real property of persons dying intestate, but the property so distributed, whether principal or undistributed income, was not to be part of the estate of such deceased beneficiary nor subjected to the payment of any claims against the estate.

The trust indenture executed on December 11, 1924, is incorporated herein by reference. Other provisions of the trust indenture will be described or set forth hereinafter.

When the trust indenture was executed in 1924, Standish, Jr., was 14, Barbara was 12, Charles was 7, Dorothy was 4, and Virginia was 2 years of age. All of these children are now living.

Standish, Jr., became 30 years of age on April 5, 1940. Thereupon the combined trust was divided into five trusts by the trustee, pursuant to the provisions of the trust indenture. Thus, during the entire taxable year 1939 and until April 5, 1940, the trustee considered and treated the trusts as a combined trust. From April 5 to December 31, 1940, and during the entire year of 1941, the trustee administered 5 separate trusts.

Standish, Jr., was married in 1936, and had one child living during the years 1939 to 1941, inclusive. Barbara was married in 1933. She had one child living during 1939 and 1940 and a second child was born in 1941.

When the December 11, 1924, trusts were created, each of the donors contributed 470 shares of preferred stock of Burroughs Adding Machine Co., in 1925 each added 230 shares of the same class of stock of the same company to the trusts, and in 1926 Lotta B. Backus transferred 529 additional shares to the trusts. All of the preferred stock of Burroughs Adding Machine Co. was redeemed and retired for cash in 1926. In 1936 Standish Backus transferred 400 shares of common stock of the above named company to the trusts. In 1925, 1926, 1928, and 1940 he made transfers of stocks of various corporations to the trusts. Additions to the corpora of the trusts have been made from time to time out of accumulated income of the trusts.

During 1939 there were 5,000,000 shares of capital stock of Burroughs Adding Machine Co. outstanding. The total number of shares owned by Lotta and Standish Backus and the trusts and their children was 316,996 shares in 1939 and 303,796 shares in 1941.

The relative contributions to the trusts made by Lotta and Standish Backus were, respectively, 51.16 percent and 48.84 percent in 1939 and 50.83 and 49.17 percent in 1940 and 1941.

After the division of the combined trust into five separate trusts, the net income of each separate trust was to be treated by the trustee as follows: From the time the beneficiary arrived at the age of 30 years, he or she was entitled to receive the entire net income. Prior to the beneficiary's becoming 30 years of age, the trustee was to pay so much of the net income as the trustee in its uncontrolled discretion deemed best to or for the benefit of the beneficiary and to defray all his or her reasonable expenses of living, education, traveling, amusement, maintenance, and other charges, the payments to be made at such times and in such amounts as the trustee might determine. Any unexpended balance of the net income of the trust was to be accumulated and become part of the principal of the trust estate until the beneficiary attained 30 years of age.

After the division of the combined trust into five separate trusts, the trustee might use any part or all of the principal of any separate trust for the benefit of the beneficiary for whose benefit the trust was created, if the trustee in its uncontrolled discretion deemed that an emergency had arisen of sufficient importance to such beneficiary to warrant the expenditure of the principal of the trust or of any part thereof.

Prior to the division of the combined trust into five trusts, that is, during the time that a single trust with five beneficiaries was in existence, the trustee had uncontrolled discretion to pay out the income of the trust as follows:

(a) Until the division of the combined trust into separate trusts is made the Trustee shall pay so much of the net income of the combined trust as the Trustee

in its uncontrolled discretion shall deem best, to or for the benefit of the several Beneficiaries and to defray all their reasonable expenses of living, education, traveling, amusement, maintenance and other charges, and also as the Trustee in its uncontrolled discretion may deem best to or for the benefit of the families of deceased Beneficiaries, if any, as defined in paragraph numbered (6) of this instrument; the payments to be made to such person or persons, at such times and in such manner and amounts as the Trustee may determine. The Trustee may expend more of the income for one of the Beneficiaries than for another, and in the care of the family as above defined of a deceased Beneficiary the Trustee may expend such portion of the income as the Trustee in its uncontrolled discretion shall deem advisable and equitable under all the then existent circumstances; and in any such event no adjustment shall be made as between the several Beneficiaries on account of the expenditure of unequal portions of the income of the combined trust on behalf of the several Beneficiaries or of the family of a deceased Beneficiary. Any unexpended balance of the net income shall be accumulated until the division of the combined trust into separate trusts and shall become and be a part of the principal of the trust estate; provided, however, that the Trustee may use any such principal at any time as if it were income. The Trustee shall have power at any time to make an irrevocable appointment or apportionment of all future income of the combined trust to the several Beneficiaries in equal portions.

\* \* \* \* \* \* \*

With respect to the invasion of principal, it was provided that:

\* \* \* prior to the division of the combined trust into separate trusts, the Trustee may use, in like event, [should the Trustee in its uncontrolled discretion deem an emergency has arisen of sufficient importance to such beneficiary to warrant the expenditure of the principal] any part of the principal of the trust estate for the benefit of any of the Beneficiaries or of the family as above defined of a deceased Beneficiary (but not exceeding in the aggregate one-fifth (⅕) of the principal for any one Beneficiary or family of a deceased Beneficiary), and upon the division of the combined trust into separate trusts any part so used shall be charged against the portion of the Beneficiary or family of a deceased Beneficiary for whom it is used and the portion of such beneficiary or of such family of a deceased Beneficiary shall be reduced pro tanto.

During the lifetime of the donors, or of either of them, the trustee was to be guided by the instructions of the donors, or of their survivor, as to the times and amounts of any such distribution of any part or parts of the principal of the trust property.

The trusts were subject to a spendthrift clause.

The trustee was given the usual powers of administration of the trust estates, such as the powers to manage, exchange, invest, and reinvest the trust property, with full power to make investments and reinvestments in such properties as the trustee should deem to be for the best interests of the beneficiary.

During the lifetime of the donors, or the survivor, the donors might remove the trustee and appoint any individual or corporation as successor trustee. If both donors should die or become incapacitated the

beneficiary, after arriving at the age of 25 years, might change the trustee to.a corporation.

During the taxable years, no portion of the income of the trusts was used for the support or maintenance of a beneficiary.

The net income of the combined trust for 1939 was ,$12,508.76. The net income of the separate trusts during 1940 and 1941 was as follows:

| Trust | ¹ 1940 | 1941 |
|---|---|---|
| Standish, Jr | $2,782.66 | $3,010.42 |
| Barbara | 2,774.18 | 2,894.09 |
| Charles | 2,774.18 | 2,894.08 |
| Dorothy | 2,774.18 | 2,894.08 |
| Virginia | 2,774.18 | 2,894.08 |
| Total | 13,879.38 | 14,587.02 |

¹ The parties agree that the 1940 trust income must be recomputed to give effect to a capital loss of $734.

Standish Backus was a director and president of Burroughs during the taxable years. His net income, as shown on his returns, was $119,010.22 in 1939, $117,119.18 in 1940, and $123,946.55 in 1941.

Lotta's net income, as shown on her returns, was $73,429.29 in 1939, $105,349.99 in 1940, and $146,570.04 in 1941.

Respondent determined that the grantors of the 1924 trusts were taxable upon the income of the trusts for the taxable years, and he included about one-half of the trust income in the income of each grantor as follows:

| | 1939 | 1940 | 1941 |
|---|---|---|---|
| Trust income added to income of Lotta Backus | $6,399.48 | $7,054.91 | $7,414.59 |
| Trust income added to income of Standish Backus | 6,109.28 | 6,824.47 | 7,172.43 |
| Total | 12,508.76 | 13,879.38 | 14,587.02 |

Pursuant to section 134 of the Revenue Act of 1943 and Treasury Decision 5392, five signed consents were filed with the Commissioner of Internal Revenue on December 27, 1944. These consents recited that from 1939 to 1941, inclusive, the entire net income of each trust was accumulated by the trustee, and that the income tax with respect to such accumulated income was paid by the trustee.

#### OPINION.

The taxable years are 1939, 1940, and 1941: During all of 1939 and during about three months of 1940, until April 5, 1940, a single trust for the benefit of five beneficiaries, the children of the grantors, was in existence. Five separate trusts existed for about nine months of 1940 and during 1941. During the period that there was one com-

bined trust, the trustee had the discretion to determine how much, if any, of the income of the combined trust should be paid to or for the benefit of the several beneficiaries. Because of this discretion, it is necessary to consider the general question presented in two parts. The general question is whether the trust income is taxable to the grantors. We shall consider (a) the liability of the grantors for tax on the income of the combined trust during the period from January 1, 1939, to April 4, 1940; and (b) the liability of the grantors for tax on the income of five separate trusts during the period from April 5, 1940, to December 31, 1941.

(a) The question is whether the income of the combined trust is taxable to petitioners under sections 22 (a), 166, or 167 of the Internal Revenue Code during the period January 1, 1939, to April 4, 1940.

At the outset, we point out that although the trustee was a corporate trustee, the grantors had the power to remove the trustee and to substitute any individual or any other corporate trustee. Therefore, the question must be considered as though the grantors were the trustees. *Commissioner* v. *Lamont*, 127 Fed. (2d) 875; *Hyman* v. *Nunan*, 143 Fed. (2d) 425.

Section 167 has no application because of the insertion of subsection (c) by section 134 (a) of the Revenue Act of 1943. The parties have stipulated that the income was accumulated; also, that the required consents have been filed.

Section 166 does not apply, in our opinion. Respondent does not contend that any principal can be distributed to Lotta or Standish, the grantors, personally. The trustee had no discretion to distribute any of the principal to any of the beneficiaries except in an "emergency." During the period in question no emergency existed or was thought to exist. Then occasion, therefore, did not arise to use any of the principal in such way that any legal obligation of Standish could be or was discharged. See *Suhr* v. *Commissioner*, 126 Fed. (2d) 283.

The question under section 22 (a) is controlled by *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719, and *Steckel* v. *Commissioner*, 154 Fed. (2d) 4, and kindred authorities, where the power to shift distribution of income from one beneficiary to another has been held to be equivalent to the taxable enjoyment and ownership of such income. This power to sprinkle income among beneficiaries existed only for as long as a single combined trust existed. It was not exercised during the period of fifteen months involved, but that is not material under section 22(a), as, for example, it is material under section 167 (c) whether income has been actually used to discharge the legal obligation of support. When the Congress enacted subsection (c) of section 167, it did not intend to alter the principles governing the taxability of

trust income to grantors under section 22 (a) of the code. See S. Rept. No. 627, 78th Cong., 1st sess. 1943, pp. 68, 69.

It is held, therefore, that respondent correctly included the income of the trust in the income of Standish and Lotta Backus for the year 1939, and that part of trust income for 1940 which is attributable to the period prior to April 5, 1940.

(b) The question here is the same as under (a), above, except that the period is from April 5, 1940, to December 31, 1941. During this period five separate trusts were in existence. The trustee had the power only to distribute or apply the income from each separate trust to or for the named beneficiary, or to accumulate the income for eventual distribution to him or his family. We have held that such control, even when retained by the grantor, is not sufficient to make the income taxable to the grantor. *Alex McCutchin*, 4 T. C. 1242. See also *Hall* v. *Commissioner*, 150 Fed. (2d) 304. Accordingly, the income arising after April 5, 1940, on each of the separate trusts is not taxable to Lotta and Standish Backus under section 22 (a).

Sections 166 and 167 are not applicable to render the income of each trust taxable to the grantors, for the reasons set forth under (a) above.

### *The 1932 Trusts.*[1]

FINDINGS OF FACT:

On May 31, 1932, Lotta Backus executed separate indentures creating five trusts for the benefit of her children, whose names and dates of birth have been set forth above. The provisions of these trusts were the same in all material respects except for names of beneficiaries.

Lotta named herself and her husband, Standish, as trustees. After the death of Standish, Lotta resigned as trustee, and appointed the Detroit Trust Co. to serve as the sole successor trustee of each trust, under separate instruments dated August 28, 1943. However, during the taxable years Lotta and Standish were the cotrustees of the trusts.

Each trust was to extend over a period measured by the life of Lotta Backus or Standish Backus, whichever should survive the other.[2] Upon the termination of each trust, the principal and the accumulated income, if any, was to be paid to the beneficiary of each trust. Provision was made for the distribution of the property and accumulated income of any trust to the wife and/or issue in the event the named beneficiary died prior to the time the trust terminated.

---

[1] In considering the provisions of the trusts which were created in 1932, it is necessary to keep in mind that the taxable years involved under the issue to which the 1932 trusts give rise are 1939, 1940, and 1941. Also, that the taxpayer against whom the deficiency lies is Lotta Backus; that she was the grantor of the trusts; and that she was living in 1939, 1940, and 1941, and that she survived Standish Backus, who died on July 13, 1943.

[2] These proceedings were heard in 1945, at which time Standish Backus was dead. The terms of the trusts, therefore, are measured by the life of Lotta Backus.

If a beneficiary died before the termination of a trust without leaving a surviving wife and/or issue, the trust estate was to be paid to the surviving brothers and/or sisters of the deceased beneficiary.

The income of each trust, to the extent of $1,000 per annum, was to be paid by the trustees or trustee to the beneficiary in equal monthly installments during the life of the beneficiary until the trust terminated. If the net income in any year exceeded $1,000, then the trustees might, in their absolute discretion, withhold and accumulate the excess of income over $1,000 and add such accumulation to the principal of the trust.

The trustees might use such part of the principal of a trust as they deemed necessary to make up any deficiency in income or to meet an emergency if, in their opinion the income of the trust was not sufficient to support, maintain, and educate the beneficiary, or in case of the befalling of any emergency, such as illness, accident, or extraordinary financial distress.

The trustees were given the usual powers of administration of the trusts.

The trusts might be augmented by either of the original *trustees.*

Lotta Backus gave to Standish Backus, only, the power to modify or terminate a trust, provided that no modification or termination could be made after the beneficiary became 21 years of age without the beneficiary's joining in the instrument executed for such purpose, and provided that no modification or termination should authorize any distribution of any principal, income, or accumulations to Lotta Backus, the donor, and provided that Standish Backus might at any time divest himself of such power conferred upon him. Upon the termination of a trust under the exercise of the above power by Standish Backus, the entire principal and accumulations of the trust were to be paid to the beneficiary if living, or, if not living, to the surviving issue of the beneficiary, or, if no issue were left surviving, then to the other children of Lotta Backus, the brothers and sisters of the deceased beneficiary.

Standish, Jr., and Charles II joined with Standish Backus in 1937 to modify the provisions of the trusts for their benefit to allow, *inter alia,* for the possible acceleration of the distribution of the principal to them.

The trustees or a trustee might resign at any time. A resigning trustee might designate who would be a successor trustee.

Each trust held, as part of its corpus, 20,600 shares of capital stock of Burroughs Adding Machine Co. during the taxable years. Lotta Backus was the donor of all of that stock to the trusts. Stocks of other corporations were held in each trust during the taxable years, which were acquired by investment of accumulated income.

No loans were made to Lotta or Standish Backus from the assets of the trusts. Separate bank accounts were maintained for each trust. Title to all stock was held in the names of the trustees, as trustees.

In 1932, when the five trusts were created, the ages of the 5 beneficiaries were as follows: Standish, Jr., 22 years; Barbara, 20 years; Charles, 15 years; Dorothy, 12 years; Virginia, 10 years. In 1939 Charles was 22 years, Dorothy was 19 years, and Virginia was 17 years. In 1941, on May 21, Dorothy became 21 years. Virginia was married on June 21, 1941.

Of the income of the trust for Dorothy for the year 1940, $5,375 was received by the trustees to the date of her marriage, and the distributions by the trustees to her to that date were $3,011.95; and of the income of said trust for the year 1941, $3,940 was received by the trustees to the date of her becoming 21 years of age, and the distributions by the trustees to her to that date were $2,309.84. Of the income of the trust for Virginia for the year 1941 $7,100 was received by the trustees to the date of her marriage, and the distributions by the trustees to her to that date were $2,722.72.

The income of each of the trusts created in 1932 is correctly set forth in the statement attached to the notice of deficiency herein.

The income of the trusts and the distributions thereof to the beneficiaries during the taxable years were as follows:

| Trusts for— | 1939 | | 1940 | | 1941 | |
|---|---|---|---|---|---|---|
| | Income | Distributed | Income | Distributed | Income | Distributed |
| Standish, Jr | $9,595.00 | $6,100.70 | $11,581.82 | $9,000.00 | $15,717.13 | $12,000.00 |
| Barbara | 9,494.16 | 9,494.16 | 11,415.00 | 10,500.00 | 15,540.00 | 8,700.00 |
| Charles II | 9,975.00 | 4,196.10 | 12,045.00 | 8,345.08 | 16,270.00 | 6,641.19 |
| Dorothy | 9,975.00 | 3,647.20 | 12,045.00 | 4,610.82 | 16,270.00 | 5,066.09 |
| Virginia | 9,975.00 | 4,096.59 | 12,045.00 | 2,924.05 | 16,270.00 | 5,013.25 |
| Total | 49,014.16 | 27,534.81 | 59,131.82 | 38,379.95 | 80,067.13 | 37,420.53 |

Respondent determined that Lotta was taxable on all of the income of the 1932 trusts. Respondent added to Lotta's income the income of the trusts in 1939, 1940, and 1941, in the respective amounts of $49,014.16, $59,131.82, and $80,067.13.

#### OPINION.

Lotta Backus, the petitioner in Docket No. 5281, is living. For the years 1939, 1940, and 1941, she has been held taxable on the income of the five trusts under section 22 (a).

The trusts are to last until Lotta Backus dies, when they are to terminate and distribution is to be made to the beneficiaries who are living, to the issue of a deceased beneficiary, if any, and if none, to the surviving brothers and/or sisters of the deceased beneficiary.

The question relates to the years 1939, 1940, and 1941. In those years, Standish Backus was living, and he and Lotta Backus were cotrustees. In the taxable years, as in all of the years of the existence of the trusts, the trustees could withhold and accumulate income of each trust in excess of $1,000, but any such accumulation of income was to be added to the principal of the trust. In each of the taxable years the trustees distributed more than $1,000 to the beneficiary of each trust, as is shown in the findings of fact. All of the income of Barbara's trust was distributed to her in 1939. Otherwise, part of the income of each trust was accumulated in each of the taxable years.

In the three taxable years, Standish, Jr., Barbara, and Charles were over twenty-one years of age. Standish Backus, as a cotrustee, could not modify or terminate the trusts for their benefit without their consent. He could have modified or terminated the trust for Virginia in any one of the taxable years without consulting her, since she was under twenty-one years in the taxable years. He could have modified or terminated the trust for Dorothy in 1939, 1940, and until May 1, 1941, during which time she was under twenty-one. He did not exercise this power with respect to any of the trusts in any of the taxable years. Standish Backus died in 1943. He alone had the above power to modify or terminate the trusts. Upon his death, the trusts became irrevocable.

The power in Standish Backus, as a cotrustee, to modify the trusts could have been used, perhaps, to change all of the provisions of a trust, even to changing the beneficiary, except that he could not exercise the power so as to authorize any distributions of any kind to the grantor, Lotta Backus. The power to terminate a trust could have only one result, namely, to accelerate distribution of the principal and income to the person who at the time of the termination was the beneficiary named in the trust, for such beneficiary was to receive the true estate upon the termination of the trust, no matter how the termination came about.

The only significant contention which respondent makes is founded upon his view of the power of Standish Backus to modify or terminate a trust, as discussed above, i. e., he has held that Lotta Backus is taxable under section 22 (a) on the income of the trusts because of that power. Respondent adopts a theory that, in the close family circle, Standish Backus was the *alter ego* of Lotta, and that the power, as described above, in him was tantamount to a retention of that power by Lotta Backus, the grantor of the trusts, in herself. By this argument and approach, respondent seeks to tax Lotta Backus on the income of the trusts under the reasoning of *Commissioner* v. *Buck*, 120 Fed. (2d) 775; and *Louis Stockstrom*, 3 T. C. 255; affirmed, 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719. He relies also

upon *Hyman* v. *Nunan, supra;* and *Commissioner* v. *Lamont, supra;* in his argument that Lotta retained the above power, herself, through her husband, Standish.

The argument of the respondent about the possible influence of the grantor, Lotta, over her husband, Standish, the cotrustee, in his exercise of the power given to him alone to modify or terminate the trusts, loses its force completely in considering three of the trusts whose respective beneficiaries had become twenty-one years. Their consent to any modification or termination of the trusts created for their benefit must be obtained, and, of course, each beneficiary has an adverse interest. Respondent's argument is rejected with respect to three of the trusts because the grantor did not have any power which she could exercise, even indirectly, to modify or terminate these trusts. The adverse interests of the beneficiaries were a bar to the exercise of such power by any indirect method. See *Lillian M. Newman*, 1 T. C. 921. It is held that the income of these three trusts is not taxable to Lotta Backus.

Nor is the income of the other two trusts, of which the beneficiaries were minors in the taxable years, taxable to Lotta Backus, grantor, under section 22 (a), because of the power in Standish Backus to modify or terminate these trusts. Petitioner did not retain in herself any power to terminate or modify the trusts. None of the income or principal could revert to her. We can not presume that Standish Backus was a mere agent of petitioner, or that he would fail to exercise his independent judgment as a trustee of the trusts, or fail to fulfill his duties as a trustee merely because of his relation to the grantor of the trusts. The argument advanced by the respondent is that Lotta Backus, through her husband, Standish Backus, could put into effect changes in the trusts so as to substitute new beneficiaries for those who were originally named, or change the interests of the named beneficiaries in the income and principal of the trusts. It is under this theory that respondent contends that the *Buck* case applies to these trusts.

We must reject respondent's argument. If any assumption is to be made, it must be that Standish Backus, as a trustee, was obligated to act under his power for the best interests of the named beneficiaries of the trusts, and that in any exercise of the power given to him he would act as an independent trustee. We think the view should be taken here that the grantor did not, under the trusts, retain any power to modify the provisions thereof. In other words, we think that the terms of the trusts should be given full effect and should not be construed in the way that respondent contends. While there are some differences between the facts in this case and the facts in *Lillian N. Newman, supra*, the same result should be reached here as was reached in that case. Cf. *Sydney R. Newman*, 5 T. C. 603.

It is held that respondent erred in including the income of these two trusts in the income of Lotta Backus. *Alex McCutchin, supra; Hall* v. *Commissioner*, 150 Fed. (2d) 304.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

HILL, *J.*, dissenting: I dissent only in respect of the holding that the income from the trusts for the two daughters who were under twenty-one years of age was not taxable to petitioner Lotta B. Backus.

TURNER, *J.*, agrees with this dissent.