Josephine P. Hendrick v. Commissioner.
Hendrick v. Commissioner
Docket No. 8867.
United States Tax Court
1947 Tax Ct. Memo LEXIS 110; 6 T.C.M. (CCH) 961; T.C.M. (RIA) 47235; August 15, 1947
George F. Dyche, Esq., 32 Liberty St., New York 5, N.Y., for the petitioner. R. O. Carlsen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies of $2,704.02 and $4,841.76 in petitioner's income taxes for 1939 and 1940, respectively, in part by adding to income reported the income of an irrevocable trust which petitioner created, reserving the right of management and directing that the income be distributed in amounts determinable by her among such of sixteen named beneficiaries as she should indicate in any year. Petitioner contends that her reserved powers do not warrant the taxing of trust income to her under section 22 (a), Internal Revenue Code *111 . Findings of Fact This proceeding was submitted upon a stipulation, which by reference is herein incorporated as findings of fact and from which it appears that: Petitioner, a widow residing at Wainscott, New York, filed her income tax returns for 1939 and 1940 with the collector of internal revenue for the second district of New York. On July 30, 1930, petitioner as settlor transferred to her brother, H. Arthur Pomroy, a wealthy financier experienced in investment management, and to herself, as trustees, certain securities to be held in trust under an agreement which, as amended on May 20, 1931, and on May 20, 1932, gave to the trustees power to hold, sell, convey, mortgage, pledge, invest and reinvest trust property as they should deem proper in their absolute discretion; to pay expenses for the protection of investments, "and generally to exercise in respect to all securities held in trust by them hereunder all the same rights and powers as are or may be lawfully exercised by persons owning similar property in their own right." Each trustee was given full power to act for both in all respects, and was specifically authorized to hold, purchase and have transferred any and all *112 trust securities in his individual name without the necessity of affixing "Trustee" thereto. No bond or other security for faithful performance was required of either. The term of the trust was originally for one year, later extended for another year, and on May 20, 1932, was continued "until the death of the survivor of James P. Hendrick and Grace Hendrick Eustis or until the arrival of May 21, 1942, whichever may occur earlier." During the term of the trust the net income was to be distributed among sixteen named individuals "in such proportions as the Trustees * * * in their absolute discretion may determine," and upon termination of the trust, principal was to be transferred to James P. Hendrick, if living; or if not, then to Grace Hendrick Eustis, or if both should die, then to the administrator or executor of the survivor of the two. In making payments to the income beneficiaries the trustees were authorized to invade principal account in advance of the receipt of income from trust securities or to borrow money deemed necessary for that purpose on notes secured by trust securities, repaying amounts so advanced from trust income later received. In case, however, income received *113 prior to termination of the trust should be insufficient to reimburse the principal account or to discharge the loans, principal was to bear the deficiency. The sixteen income beneficiaries of the trust comprised necessitous former employees of petitioner, friends and also four close relatives: Grace Hendrick Eustis, a daughter; Elinor S. Hendrick, a daughter-in-law; Arthur P. Hendrick, a grandson; and Joan Patterson, a granddaughter. None of the relatives was a dependent of petitioner. Prior to creation of the trust petitioner had made gifts to some of those named as beneficiaries, supplementing their incomes to insure a comfortable living in accordance with their stations in life, and the trustees were granted discretion in making payments so that they might determine the amount necessary for the same purpose. Petitioner's close relatives were named beneficiaries in order that trust income in excess of the others' needs could be paid to them. In administration petitioner as trustee determined which of the beneficiaries should receive income and in what amounts, and her co-trustee acquiesced without objection. Over the duration of the trust, income of a single year was never distributed *114 to more than eight or less than four beneficiaries and in amounts ranging from $100 to $5,791.67. Some beneficiaries received little or nothing because of betterments in their condition. In 1939 and 1940 the trust received and distributed income as follows: Beneficiary
1939
1940
Beatrice B. Hayward, friend
$3,000.00
$3,396.77
Mabel Richardson, friend
200.00
Lillian B. Johnson, former
nurse
360.00
349.38
Grace P. H. Eustis, daughter
3,699.66
2,426.26
Elinor S. Hendrick, daughter-
in-law
4,192.40
Total
$7,259.66
$10,364.81
Pomroy died in 1940 and was succeeded as co-trustee by petitioner's son, James P. Hendrick, a lawyer with experience in investment management. In administration petitioner left changes in investment to the co-trustee, acquiescing in his recommendations. The original stock certificates, bonds and other trust assets, however, remained in her name until termination of the trust. None of these securities were of a corporation of which petitioner was an officer or had control. During 1930-1932 petitioner's income was substantially diminished, and the trust was created in part to reduce her taxes. The trust's net income of $7,259.66 *115 in 1939 and of $10,364.81 in 1940 was reported by the fiduciaries for each year and deducted in full as distributed. The beneficiaries Grace P. H. Eustis and Elinor S. Hendrick reported the amounts paid to them as taxable income. In determining petitioner's income taxes for 1939 and 1940 the Commissioner added to income reported the net income of the trust. Opinion Petitioner contests the Commissioner's determination that the trust income is taxable to her under sections 22 (a), 166 and 167 of the Internal Revenue Code, and respondent defends, limiting his argument to the application of section 22 (a) by virtue of the doctrine enunciated in Helvering v. Clifford, 309 U.S. 331. This doctrine has been judicially interpreted so frequently as not to require extended discussion. Petitioner attempts to demonstrate that it has no application to her trust by stressing differences in the latter's terms and those of the trusts involved in the Clifford opinion and decisions following it. We have carefully considered these differences, and have found no case precisely in point. But the Clifford doctrine is elastic, not rigid, and in formulating it, the court *116 stressed that: "* * * no one fact is normally decisive but all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership. * * *" We have, therefore, examined the instrument and the circumstances leading petitioner to create the trust not severally but as a whole, and have concluded that the bundle of rights which she retained over the income is so substantial as to impress upon her for tax purposes the character of owner. Petitioner, a person of means, enjoyed an income in excess of her own requirements. She was charitably disposed, and prior to 1930 had made gifts to her friends and former employees upon learning that they were in need. To continue this practice and to achieve a reduction of her taxes, she executed the trust instrument, declaring herself and brother to be trustees of certain securities which she continued to hold as before in her own name and over which, as trustee, she expressly retained all the powers inherent in ownership. While true that her brother (and later her son) was co-trustee, and in practice made decisions about investments, each trustee was given authority to act for both, and since, in any event, *117 the co-trustee was the person of whom she would have logically sought advice, she may be treated as having alone all powers granted to the trustees. The potential income beneficiaries consisted of sixteen persons, of whom twelve were possible objects of her existing charity policy and the other four were descendants and a daughter-in-law, the natural objects of her bounty. The latter were designated beneficiaries in order that any excess of trust income above amounts distributed to the twelve could be paid to them - petitioner having and exercising absolute discretion as to which of the beneficiaries should receive income in any years and in what amount. In the making of such payments, moreover, petitioner was not limited to income but could invade corpus and on termination of the trust any deficiency would be borne by corpus. Thus in effect petitioner retained an unrestricted power to give both income and corpus to whom she might choose among the sixteen and in amounts determined in her absolute discretion. In practice she alone designated the beneficiary and the amount to be paid to each; she never designated more than eight or less than four in a single year and a large part of *118 the income was distributed among her family group. As trustee, she could borrow, pledge and sell; she was not required to hold assets in the trust's name or to add "trustee" to her name. We can not find that under the broad powers retained petitioner divested herself of the beneficial ownership of trust income. While true that she could not channel the income to herself, this Court remarked in Lura H. Morgan, 2 T.C. 510: "* * * To a person of ample means the right to say who shall receive property and income may be a more important attribute of ownership than the right to use them for his own well-being. * * *" And in numerous decisions a power to shift income or vary the amount distributable among the members of a group, exclusive of the settlor, has been deemed a substantial attribute of ownership which in conjunction with other retained elements of control warranted the taxing of a trust's income to the grantor. Funsten v. Commissioner (C.C.A., 8th Cir.), 148 Fed. (2d) 805; Stockstrom v. Commissioner (C.C.A., 8th Cir.), 148 Fed. (2d) 491; certiorari denied, 66 S. Ct. 23; Miller v. Commissioner (C.C.A., 6th Cir.), 147 Fed. (2d) 189; *119 George v. Commissioner (C.C.A., 8th Cir.), 143 Fed. (2d) 837; Williamson v. Commissioner (C.C.A., 7th Cir.), 132 Fed. (2d) 489; Brown v. Commissioner (C.C.A., 3rd Cir.), 131 Fed. (2d) 640; Commissioner v. Lamont (C.C.A., 2nd Cir.), 127 Fed. (2d) 875; Buck v. Commissioner (C.C.A., 2nd Cir.), 120 Fed. (2d) 775; Estate of Standish Backus, 6 T.C. 1036; I. A. Wyant, 6 T.C. 565; Ellis H. Warren, 45 B.T.A. 379; affd. (C.C.A., 6th Cir.), 133 Fed. (2d) 312. Petitioner cites as to the contrary Hawkins v. Commissioner (C.C.A., 5th Cir.), 152 Fed. (2d) 221, wherein a reserved power to alter within certain limits enabled grantor to change the beneficiaries' interests, but as the court itself stressed, the grantor lacked other elements of control such as power of management, trustee capacity, etc., which are present here and were present in cases there cited for distinction. Petitioner also emphasizes that, unlike the Clifford trust, her instrument precludes any reversion to her, directing a transfer of all assets to a remainder beneficiary upon termination. Such a *120 provision did not affect control over income, however, and appeared in the trusts considered in other cases wherein income was held taxable to the grantor. Stockstrom v. Commissioner, supra; Miller v. Commissioner, supra; Foerderer v. Commissioner (C.C.A., 3rd Cir.), 141 Fed. (2d) 53. Decision will be entered for the respondent.