Arthur H. Ingle v. Commissioner.
Arthur H. Ingle v. Commissioner
Docket No. 17082.
United States Tax Court
1949 Tax Ct. Memo LEXIS 94; 8 T.C.M. (CCH) 776; T.C.M. (RIA) 49209; August 26, 1949
*94 Under a trust agreement executed in 1929, as amended, taxpayer reserved the right and power to change any beneficiary or beneficiaries or the proportionate interest of any beneficiary or beneficiaries, except to revest title to principal or income in himself. The net income was payable quarterly to taxpayer's two adult daughters. Upon the death of a beneficiary, the principal of the fund set aside for her and any accrued income was payable to the taxpayer-grantor or his estate. The net income of the trust during 1944 was paid to the two daughters. The trust agreement contained a broad spendthrift provision. Held, the income of the trust is taxable to taxpayer-grantor under section 22(a), I.R.C.
H. F. Calkins, Esq., 5 S. Fitzhugh St., Rochester, N. Y., for the petitioner. William A. Schmitt, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $21,201.52 for the year 1944. The only question involved is whether income of a certain trust created by the petitioner in 1929 is taxable to him. The facts were stipulated. Findings of Fact The petitioner resides at 2200 East Avenue, Rochester, New York. He filed his income tax return for the year 1944 with the collector of internal revenue for the 28th district of New York and paid the tax shown thereon. On January 21, 1929, the petitioner, as grantor, and the Union Trust Company of Rochester, as trustee, executed a trust agreement under the terms of which the petitioner transferred to the trustee securities and property as follows: Cash
$5,635.17 Due bills of Hibbard, Palmer & Kitchen evidencing the purchase of: Number of Shares
Description
25
Dupont
25
Radio Corp. of America
25
Niles-Bement & Pond
25
Wright Aero
*96 Due bills of Sage, Wolcott & Steele evidencing the purchase of: Number of Shares
Description
50
Chile Copper
25
Timken Roller Bearing
50
Western Union
25
American Locomotive
25
Public Service of N.J.
25
Illinois Central
25
Drug, Inc.
25
New York Central
25
General Electric
25
North American
25
Marlin-Rockwell
25
Southern California Edison
25
American Tel. & Tel.
25
Eastman Kodak
25
International Tel. & Tel.
25
Chesapeake & Ohio
25
Westinghouse Electric &
Mfg. Co.
25
Vacuum Oil
Pursuant to reserved power, the trust agreement was amended by the petitioner on July 1, 1929, December 9, 1941, December 10, 1941, and February 4, 1943. The trust agreement and amendments are included herein by reference. The trust agreement as amended and as effective during the taxable year, in so far as pertinent, provides as follows: "The Trustee shall divide the trust fund into two separate trust funds to be hereafter designated as Trust 'A' and Trust 'B'; the trustee shall hold, manage, invest and reinvest (subject to the restrictions provided in said instruments) all securities or other properties from time to time constituting Trust 'A' and *97 shall collect and receive the interest, dividends, income and profits therefrom and, after defraying all expenses and lawful charges, shall pay the net income thereof quarterly or in other convenient installments to Eunice V. Kalbfus during her lifetime and upon her death pay over the balance of the principal of said Trust 'A' remaining in the hands of the trustee to the grantor, if living, otherwise to the legal representatives of the grantor's estate; the trustee shall hold, manage, invest and reinvest (subject to the restrictions contained in said instruments) the securities or other properties from time to time constituting Trust 'B' and shall collect and receive the interest, dividends, income and profits therefrom and, after defraying all expenses and lawful charges, shall pay the net income thereof quarterly, or in other convenient installments, to Florence I. Calkins during her lifetime, and upon her death pay over the balance of the principal of said Trust 'A' remaining in the hands of the trustee to the grantor, if living, otherwise to the legal representatives of the grantor's estate. For the purpose of investment and administration the funds of said trusts may in the discretion *98 of the trustee be held in one fund. [As amended February 4, 1943.] * * *
"The grantor hereby reserves to himself the right and power at any time during his life to change any beneficiary or beneficiaries or the proportionate interests of any beneficiary or beneficiaries under this agreement and to change, modify, alter in any respect or particular, the terms, provisions, or conditions of this trust agreement by a duly executed and acknowledged instrument to that effect delivered to the trustee then holding office hereunder, except that the duties and liabilities of such trustee shall not be increased without its written consent; and except that the right or power hereby reserved to the grantor does not include the right or power to revest in himself title to the whole or any part of the income or principal of the trust fund nor the right nor power to control, advise or limit the investment or the reinvestment of the trust fund by the trustee in any way, nor the power to change the trustee or appoint any successor trustee hereunder. [As amended December 10, 1941.] * * *
"The trustee is hereby authorized to invest or reinvest the trust funds hereunder in any such property *99 or securities with full power of sale in connection therewith as may seem to be most advantageous for the said trust estate without limitation as to such investments imposed by the laws of the State of New York for trust investment, except that any investment made by such trustee shall be made only upon the consent and approval of the then named beneficiary or beneficiaries or a majority of them. [As amended December 10, 1941.] * * *
"The trustee and any successor trustee acting hereunder may be removed at any time by the then named beneficiary or beneficiaries, or a majority of them, by an instrument in writing directing such removal, executed and acknowledged by the beneficiary or beneficiaries, or a majority of them, and delivered to such trustee. If at any time the trustee shall be so removed another bank or trust company shall at the same time be appointed as successor trustee by an instrument in writing executed and acknowledged by the beneficiary or beneficiaries, or a majority of them, and delivered to the trustee and such successor trustee. * * * [As amended December 10, 1941.] * * *
"Any income payable by the Trustee under any provision of this instrument *100 shall not be pledged, assigned, transferred, sold or in any manner whatsoever accelerated, anticipated or encumbered by any beneficiary, nor shall any income be in any manner subject or liable in the hands of the trustee for the debts, contracts or engagements of any beneficiary or be subject to any assignment or any other voluntary or involuntary alienation or disposition whatsoever. Should any beneficiary attempt in any manner to anticipate, dispose of, encumber or change his or her interest, or any part thereof, and in the event of bankruptcy or the rendition of any judgment or decree against the interest of such beneficiary, or the levy of any execution, or writ of attachment or garnishment thereon, then such income which would otherwise be paid over directly to such beneficiary in the discretion of the trustee shall be applied directly for his or her support or maintenance or the support and maintenance of his or her family (excluding any separate or divorced spouse), or both, or be allowed to accumulate in the hands of the Trustee and be treated as and form a part of the principal of the trust fund from which it was derived, to be invested and controlled and to be disposed of *101 as a part thereof; provided, however, that any such accumulations or any part thereof may be applied from time to time by the trustee as the trustee may deem proper or desirable, in like manner as if the same were a part of the current income derived from the trust fund; and provided further that no accumulation of income shall be permitted by virtue of any provision of this section at any time to any extent in contravention of law. It is the intent hereof that the interest of the beneficiaries shall not, under any circumstances, be liable to, or available for, the payment of alimony or support money in favor of a separate or divorced husband or wife. If any provision of this section shall be deemed illegal the same shall not in anywise affect or impair any other provisions of this section or of any other section of this instrument, but any provision in this section contained that might otherwise injuriously affect or impair any other provision of this instrument shall be rejected. [As added by amendment dated December 10, 1941.]" The beneficiary named in the original trust agreement was William O. Ingle, brother of the grantor. Under the terms of the trust agreement the net income *102 was payable to him during his lifetime. In addition the trustee was authorized to pay over to such beneficiary so much of the principal of the trust fund at any time which in the discretion of the grantor and trustee, or the survivor, was deemed to be necessary for his support and maintenance in comfort. Upon the death of such beneficiary, the balance of the principal remaining, together with any accrued income, was payable to the grantor, if living, otherwise to the legal representatives of his estate. On December 9, 1941, the petitioner amended the trust agreement, effective as of January 1, 1941, directing the trustee to pay one-half of the net income of the trust fund quarterly to Eunice V. Kalbfus and one-half thereof quarterly to Florence I. Calkins, "during the lifetime of WILLIAM O. INGLE, brother of the grantor" and upon the death of William O. Ingle to pay the balance of the principal remaining, together with any accrued income, to the grantor, if living, otherwise to the legal representatives of the grantor's estate. The provision authorizing the trustee to pay to William O. Ingle, original beneficiary, part of the principal was revoked December 10, 1941. The provision *103 with respect to the distribution of the net income of the trust was again amended on February 3, 1943, directing the trustee to pay the income of the trust to Eunice V. Kalbfus and Florence I. Calkins during their respective lifetime, which amendment has been heretofore set forth in full. The net income of Trust A was, during the year 1944, paid to and received by the adult daughter of petitioner, Eunice V. Kalbfus. The net income of Trust B was, during the year 1944, paid to and received by the adult daughter of petitioner, Florence I. Calkins. Each daughter filed her income tax return for the year 1944 with the collector of internal revenue for the 28th district of New York reporting the trust income received by her and paid the tax due thereon. The petitioner was born on September 7, 1876 and in 1944 his life expectancy was 9.48 years. Eunice V. Kalbfus was born August 19, 1904, was married April 24, 1929, and throughout 1944 was living with her husband and children at 2145 East Avenue, Rochester, New York. In 1944 her life expectancy was 28.18 years. Florence I. Calkins was born April 24, 1907, was married June 12, 1929, and during the year 1944 was living with her husband *104 and children at Ottumwa, Iowa, until on or about May 1, 1944; at 170 Commonwealth Road, Rochester, New York, until on or about October 1, 1944; and at North Hollywood, California, for the remainder of the year. Her permanent residence from February 29, 1936, to date, has been 170 Commonwealth Road, Rochester, New York. In 1944 her life expectancy was 30.35 years. The statement attached to the notice of deficiency discloses that the net income reported in petitioner's 1944 return was $41,837.45. The Commissioner, in computing the deficiency herein involved, increased the reported net income by adding thereto "Trust Income" of $18,450, with the following explanation: "Income of the Arthur H. Ingle Trust, under agreement with the Union Trust Company of Rochester, is held to be taxable to you under the provisions of the Internal Revenue Code." Two other adjustments to petitioner's reported net income were made by the Commissioner, which are not in controversy. Opinion VAN FOSSAN, Judge: The respondent contends that the income of the trust involved herein for 1944 is taxable to the petitioner under the provisions of section 22(a) of the Internal Revenue Code *105 and the doctrine of Helvering v. Clifford, Jr., 309 U.S. 331. He argues that the power to dispose of the income of the trust is in all essential respects the equivalent of ownership and that the disposition of such income is the realization or enjoyment thereof, citing Harrison v. Schaffner, 312 U.S. 579; Helvering v. Horst, 311 U.S. 112; Helvering v. Eubank, 311 U.S. 122; and Commissioner v. Buck, (CCA-2) 120 Fed. (2d) 775. It is argued by the petitioner that to hold that he is the substantial owner of the corpus of this trust is to carry a legal fiction far beyond the boundary of reason and the intendment and rationale of the Clifford decision. He argues further that to tax him upon the trust income involved, from which he can derive no possible economic enjoyment, is to tax him upon "non-material satisfactions" which are not taxable to a donor as income, citing Helvering v. Stuart, 317 U.S. 154. In the Stuart case, supra, decided on sections 161, 166 and 167, I.R.C., the Court stated that "'non-material satisfactions' (gifts-contributions) of a donor are not taxable as income", *106 citing Helvering v. Horst, supra. However, in the Horst case, supra, it is stated that the use of a taxpayer's right to receive income "to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money he derives money's worth from the disposition of the coupons which he has used as money or moneys worth in the procuring of a satisfaction which is procurable only by the expenditure of money or money's worth. * * *" In that case the taxpayer, owner of negotiable bonds, detached from them interest coupons shortly before their due date and delivered them to his son as a gift. It was held that, although the donor by his gift of the coupons had precluded any possibility of collecting the coupons himself, nevertheless, the interest collected by the son on the coupons was income taxable to the donor in the year of collection *107 by the son. Thus in that case a non-material satisfaction was held to be taxable as income. The petitioner transferred legal title to the property constituting the trust fund to the corporate trustee. He relinquished in December, 1941, all direct control of the management and investment thereof. Investments made by the trustee were to be made only with the consent and approval of the then beneficiaries. Petitioner retained, however, the power at any time to change any beneficiary or the proportionate interest in the income of any beneficiary, and "to change, modify, alter in any respect or particular the terms, provisions, or conditions" of the trust agreement, with certain exceptions, notably, the right or power to revest title to the trust fund or income therefrom in himself. Whether or not the petitioner ever exercised any control of investments through the beneficiaries is not disclosed by the evidence. The power to change beneficiaries was exercised in 1941 when petitioner excluded his brother from participation in the income and principal by amending the trust agreement naming his two daughters as income beneficiaries. As stated in Leonard A. Yerkes, 47 B.T.A. 431, *108 affirmed without written opinion (CCA-3), April 19, 1943, such "retained control over the income made the recipient subject to petitioner's bounty from year to year." Upon the death of the income beneficiaries, the trustee was required to pay the principal and accrued income to the petitioner, if living, otherwise to the representatives of his estate. No disposition of the trust principal was made by the petitioner except the transfer of title thereof to the trustee for the purpose of management and collection of the income and payment thereof to the beneficiaries designated or to be designated from time to time by him. Thus, petitioner also retained the power to appoint the remainder. Furthermore, the petitioner added broad spendthrift provisions to the trust agreement, so that the beneficiaries could in no way realize anything from the trust, directly or indirectly, except through distributions by the trustee. The transfer by petitioner of the trust fund to a trustee did not deprive him of the equivalence of ownership. What was stated in Corliss v. Bowers, 281 U.S. 376, is equally applicable herein. That case involved a revocable trust, the income of which was payable *109 to the donor's wife with remainder over to their children. The income was held taxable to the donor, the Court stating, in part, as follows: "* * * The legal estate was in the trustee and the equitable interest in the wife. "But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed - the actual benefit for which the tax is paid. If a man directed his bank to pay over income as received to a servant or friend until further orders, no one would doubt that he could be taxed upon the amounts so paid. It is answered that in that case he would have a title, whereas here he did not. But from the point of view of taxation there would be no difference. The title would merely mean a right to stop the payment before it took place. The same right existed here although it is not called a title but is called a power. The acquisition by the wife of the income became complete only when the plaintiff failed to exercise the power that he reserved. * * *" It has been stated that the fact that there is a possibility of reverter to the donor is no reason for the application of Helvering v. Clifford, supra.Reginald B. Parsons, 44 B.T.A. 1142. *110 It is, however, a fact to be considered with all the other facts and circumstances shown. The power to dispose of income is the equivalent of ownership of it and the exercise of the power to procure its payment to another, whether to pay a debt or to make a gift, is within the reach of section 22(a). Harrison v. Schaffner, supra; Helvering v. Eubank, supra; and Helvering v. Horst, supra. In Brown v. Commissioner, 131 Fed. (2d) 640, certiorari denied, 318 U.S. 767, involving a trust similar in many respects, to the one involved herein, the Court stated that "a settlor who is a person of means and who can control the spending of a fund, which she has set up, in every respect except spending it for herself is sufficiently the 'owner' of the fund to make its income taxable to her under § 22(a)." In Little v. Commissioner, 154 Fed. (2d) 922, it is stated that "The power which can be exercised over the lives of others by the ability to give or withhold money, is a substantial enjoyment." See also: Lura H. Morgan, 2 T.C. 510, 515-516; Ben F. Hopkins, 5 T.C. 803, affirmed 157 Fed. (2d) 679; *111 and Estate of Standish Backus, Deceased, 6 T.C. 1036, 1042-1043. It would serve no useful purpose to discuss all of the cases cited by petitioner and respondent. The decision in each case depends upon its own peculiar facts. The action of the respondent in including the 1944 income of the trust involved in the taxable income of the petitioner is approved. Decision will be entered for the respondent